IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERENICE ANGOTTI, DANIEL BORRERO, RALPH E. COWLEY, JACK GRIFFITH, DONALD S. MUELLER, KENT D. RUSSELL, BERNARD W. SCHREINER and RAYMOND VALLI, on behalf of themselves and others similarly situated,<br><br>            Plaintiffs,<br><br>    v.<br><br>REXAM, INC., and REXAM, INC., PENSION AND BENEFITS COMMITTEE,<br><br>            Defendants.<br>_____ / | No. C 05-5264 CW<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO TRANSFER |

   Defendants Rexam, Inc., and Rexam, Inc., Pension and Benefits Committee (collectively, Rexam) move to transfer this entire case to the District of Minnesota, or, in the alternative, for an order (a) severing and transferring Classes I and II to Minnesota; or (b) transferring the entire case or Classes I and II to Missouri; or (c) staying the case pending resolution of the related Minnesota action and any associated appeals.  Plaintiffs Berenice Angotti, Daniel Borrero, Ralph E. Cowley, Jack Griffith, Donald S. Mueller, Kent D. Russell, Sr., Bernard W. Schreiner and Raymond Valli oppose the motion.  The matter was heard on January 27, 2006.

   Having considered all of the papers filed by the parties and oral argument on the motion, the Court grants Rexam's motion in

part and denies it in part, as described below.

## BACKGROUND

Plaintiffs are retired former Rexam employees who were informed in September, 2005 that their company-provided health benefits would be discontinued. Plaintiffs seek to represent three classes of retirees, formerly represented by the International Association of Machinists and Aerospace Workers, AFL-CIO[1] (IAM), and their dependents: Class I, those who retired from a facility covered by a "Basic Agreement" negotiated between IAM and Rexam or a Rexam predecessor; Class II, those who retired from San Leandro or Modesto, California facilities covered by an "independent agreement" between an IAM affiliate and Rexam or a Rexam predecessor; and Class III, those who retired from Kent or Vancouver, Washington or Gary, Indiana facilities covered by an "independent agreement" between an IAM affiliate and Rexam or a Rexam predecessor. Complaint ¶ 29.

Plaintiffs estimate that there are approximately 1,418 prospective members of Class I, 182 members of Class II and 40 members of Class III. Id. ¶ 31. Drawing on the results of its own September, 2004 census, Rexam states that of all IAM retirees (Classes I, II and III), approximately 296 live in California (more than any state other than New York). Of those California IAM retirees, Rexam states that 273 retired from the San Leandro or Modesto plants, i.e. are members of Class II. It believes that

---

[1] Although IAM is not a party to this lawsuit, it is a defendant in related suits, and its attorneys, the law firm of O'Donoghue & O'Donoghue, represent Plaintiffs in this action.

2

four California retirees retired under a Basic Agreement and thus are members of Class I, and that the status of the remaining fifteen California retirees is unknown.

According to the testimony supporting Plaintiffs' motion for a restraining order, potential witnesses reside across the country, although not in Minnesota or Missouri.  Herman Howell, a resident of Oakland, California, was involved in all of the Class II negotiations as a union shop steward, business representative and later chief negotiator, and thus is a likely witness living in California.  Howell Decl. ¶¶ 4-5.  The union records relating to Class II negotiations are maintained in the Oakland IAM office.  Id. ¶ 7.

The underlying dispute here is already the subject of litigation in other fora.  In May, 2003, Rexam filed suit in the District of Minnesota against the United Steelworkers of America (USWA), the IAM, nine individual steelworker retirees and one machinist retiree, Lloyd Erickson, a retiree from the San Leandro plant (and thus a member of Plaintiffs' proposed Class II) now living in Minnesota.  See Martorana Decl., Ex. 1, Am. Complaint, Rexam, Inc., v. United Steelworkers of Am., No. 03-CV-2998-ADM/AJB (D. Minn., filed May 20, 2003) (hereinafter Rexam I Complaint).  Rexam seeks a declaratory judgment allowing it to modify the terms of its retirees' health benefit plans.

In Rexam I, Rexam sought to certify a defendant class of retired former employees and their dependents covered under the benefit plans.  On May 25, 2005, Judge Ann D. Montgomery denied Rexam's motion for certification of a single defendant class.  She

3

found that "the individualized differences between the eleven different groups of plans and CBAs, the companies who negotiated them, the separate unions and the individual bargaining groups override any common factual or legal questions."  Martona Decl., Ex. 21, Rexam I May 25, 2005 Memorandum Opinion and Order.  In considering whether certification of defendant subclasses could cure this deficiency, Judge Montgomery found that Rexam's proposed representative of the IAM subclasses was inadequate; she denied as untimely Rexam's motion to amend its complaint to add new proposed IAM representatives, and thus denied the motion to certify the IAM subclasses.  Id. at 12-16.  Judge Montgomery certified only three USWA subclasses, and denied certification of four other USWA subclasses.  Mr. Erickson is therefore the only defendant in the Minnesota action who is also a member of a proposed Plaintiff class here.

After the May 25, 2005 partial denial of Rexam's motion for class certification, the USWA and three steelworker retirees filed a lawsuit in the Northern District of Ohio seeking to bring suit on behalf of three steelworker subclasses for which Judge Montgomery had denied certification.  On September 6, 2005, Rexam moved to dismiss or transfer the USWA's Ohio case.  Tedrow Decl., Ex. 22, Docket, Baker v. Rexam, Inc., No. 3:05cv07247-DAK (N. D. Ohio, filed June 8, 2005).  Rexam asked Judge Montgomery to hold the USWA in contempt on the grounds that the filing of Baker violated an earlier 2003 order enjoining a similar Ohio lawsuit.  Rexam also requested leave to file a motion for reconsideration of the denial of class certification.  While generally affirming the order

4

1  denying certification of a single defendant class, Judge Montgomery
2  granted Rexam's motion for reconsideration with respect to the
3  certification of two additional steelworker subclasses.  Tedrow
4  Decl., Ex. 6, Rexam I, Sept. 22, 2005 Order Denying Certain
5  Portions of Rexam's Motion to Reconsider and Rexam's Motion to Show
6  Cause (hereinafter Rexam I, Sept. 22, 2005 Order).  As a result,
7  Judge Montgomery expected the newly-certified subclass to withdraw
8  its claims in Baker; however, she also declined to enjoin the rest
9  of the Ohio case (i.e. the claims of the "USWA Managed Care
10 Election Subclass") on the grounds that "this case and a portion of
11 the Ohio case no longer involve the same factual or legal issues.
12 Enjoining Baker and the USWA from filing the recent action in Ohio
13 federal court would leave them without a forum for the case to be
14 heard."  Rexam I, Sept. 22, 2005 Order.

15     In Rexam I, Rexam moved for summary judgment of its claims
16 against the USWA subclasses and against the IAM, but not those
17 against Mr. Erickson.  The summary judgment motion has been argued
18 and submitted, and concerns the same Basic Agreement that would be
19 involved in the adjudication of Plaintiffs' Class I claims.

20     Shortly after its Minnesota motion for class certification was
21 denied, Rexam filed suit in the Eastern District of Missouri for
22 declaratory judgment against nine defendants individually and as
23 representatives of a class of retirees formerly represented by IAM.
24 Matrona Decl., Ex. 23, Complaint, Rexam, Inc., v. Mueller, No. 4
25 05-CV-00868-DJS (E.D. Mo., filed May 27, 2005) (hereinafter Rexam
26 II).  Plaintiff Donald Mueller is one of those named individual
27 defendants in Rexam II, and the defendant class Rexam sought to
28

5

certify there overlaps with Plaintiffs' proposed Class I here.  In an October 7, 2005 order, the Missouri court dismissed Rexam II. It declined to exercise jurisdiction over Rexam's claims for declaratory judgment because the necessity of declaratory relief was based on contingencies which had not yet occurred, including the termination of health benefits, and thus Rexam's action would require the court to issue an advisory opinion.  Rexam II, Oct. 7, 2005 Order at 5.  The Missouri court reasoned, "[Rexam]'s history of changes to the plans, recent amendments to the plans without a ruling from the Court, and [Rexam]'s inital selection of a forum where only two members of the proposed defendant class reside, Rexam, 2005 WL 1260914, at *7, belie the immediacy and the necessity of the relief."  Id. at 6.  Alternatively, the court found that Rexam lacked standing to bring the case.  Id. at 8.

On October 10, 2005, in the Eastern District of Missouri, Rexam then filed a third declaratory judgment action also against a proposed class of retired former IAM-represented employees and their dependents.  Matrona Decl., Ex. 25, Complaint, Rexam, Inc., v. Mueller, No. 4 05-CV-00868-DJS (E.D. Mo., filed May 27, 2005) (hereinafter Rexam III).  Rexam alleged that "in the Fall, 2005, effective January 2006," it had notified retirees of the following changes to their welfare plan benefits:

> All prescription drug coverage terminated effective January 2006 to be replaced by the new Medicare Part D drug coverage; the Welfare Plans will no longer pay for Medicare Part A deductibles; and the Welfare Benefit Plans will no longer pay any portion of a premium for Medicare Part B coverage. Further, the Welfare Benefit Plans will provide no supplemental coverage to Medicare Part A, Part B, or Part D.

Rexam III Complaint ¶ 30.  Rexam claims that its fall, 2005 notice

1  to retirees of termination of medical benefits renders that
2  controversy ripe for adjudication.
3       After Plaintiffs filed their lawsuit and request for a
4  temporary restraining order and preliminary injunction, Rexam filed
5  in Missouri a motion to enjoin the action in this Court.  On
6  December 29, 2005, after a hearing, Judge Donald J. Stohr denied
7  Rexam's motion to restrain the action here temporarily.  He found
8  that compelling circumstances, namely Rexam's "race to the
9  courthouse" for the purpose of preempting Plaintiffs' suit in their
10 preferred jurisdiction, rendered the usual "first-filed" rule
11 inapplicable.

## LEGAL STANDARD

13      Title 28 U.S.C. § 1404(a) provides as follows:  "For the
14 convenience of parties and witnesses, in the interest of justice, a
15 district court may transfer any civil action to any other district
16 or division where it might have been brought."  The statute,
17 therefore, identifies three basic factors for district courts to
18 consider in determining whether a case should be transferred:
19 (1) convenience of the parties; (2) convenience of the witnesses;
20 and (3) the interests of justice.  28 U.S.C. § 1404(a).
21      The Ninth Circuit has held that a fourth factor for the court
22 to consider is the plaintiff's choice of forum. See Securities
23 Investor Protection Corp. v. Vigman, 764 F.2d 1309, 1317 (9th Cir.
24 1985).  The Securities Investor court held that, unless the balance
25 of the § 1404(a) factors "is strongly in favor of the defendants,
26 the plaintiff's choice of forum should rarely be disturbed."  Id.;
27 see also Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834,

7

843 (9th Cir. 1986) ("defendant must make a strong showing . . . to warrant upsetting the plaintiff's choice of forum").

The plaintiff's choice of forum is given less weight when an individual represents a class. Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987). In judging the weight to be accorded to the plaintiff's choice of forum, consideration must be given to the extent of the parties' contacts with the forum, including those related to the plaintiff's cause of action. Id. The plaintiff's choice is accorded only "minimal" consideration if "the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter." Id.

The burden is on the defendant to show that the convenience of parties and witnesses and the interest of justice require transfer to another district. See Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 279 (9th Cir. 1979).

DISCUSSION

I.  Transfer to Minnesota

Rexam moves for a transfer of this action to the District of Minnesota pursuant to § 1404(a). Rexam asserts, and Plaintiffs do not deny, that they could have chosen to bring their action in Minnesota. Therefore, the Court's decision must rest on a balancing of the relevant factors.

Rexam urges the Court to transfer the action to Minnesota based on the interests of justice, in order to conserve judicial resources and to avoid potentially inconsistent results.

With respect to proposed Class I, this factor weighs heavily in favor of transferring the claims to Minnesota. The contracts

8

1 underlying Class I's claims are already at issue in Minnesota.  The
2 fact that the same Basic Agreement must be considered in both
3 lawsuits means that judicial resources would be greatly conserved
4 if Judge Montgomery, who is familiar with the factual issues
5 relating to the Basic Agreement, were to decide both cases.
6 Furthermore, transfer of Class I's claims would avoid a risk of
7 inconsistent rulings, based on the law of two different circuits.
8 Both Rexam and Plaintiffs' claims would be reviewed by the same
9 circuit court.

10    None of arguments raised by Plaintiffs negates these strong
11 interests in judicial efficiency and consistency.  Plaintiffs'
12 argument that they had no affirmative obligation to bring suit in
13 Minnesota attacks a strawman.  The question is not whether
14 Plaintiffs were obliged to bring suit in Minnesota, but whether
15 Minnesota is the superior forum.  Plaintiffs provide no support for
16 their argument that transferring the case would necessarily force
17 Judge Montgomery to reopen class certification proceedings in Rexam
18 I, or to delay adjudication of Rexam I.  It would be for the
19 Minnesota court to decide whether and how to consolidate the two
20 cases in light of their differing stages.  If the case were
21 randomly assigned to a judge other than Judge Montgomery, it could
22 presumably be related to Rexam I.

23    With respect to Classes II and II, however, the interests of
24 justice do not weigh so strongly in favor of transfer to Minnesota.
25 Judge Montgomery's denial of Rexam's motion for certification of a
26 single defendant class in Rexam I demonstrates her view that the
27 various agreements and groupings of retirees involve varying legal

28                                9

and factual issues.  Rexam's claims against Mr. Erickson, the only Class II member who is a defendant in <u>Rexam I</u>, are not currently under consideration by Judge Montgomery, and Rexam has not shown that the Minnesota court has significant familiarity with the particular claims against Mr. Erickson.  Either party could move to transfer Rexam's claims against Mr. Erickson to California.  With respect to Class III, Defendants concede in their reply that "neither the Minnesota court nor the Missouri court is poised to resolve the benefit modification issue."  Defs.' Reply at 4.  Different outcomes for retirees under the Basic Agreements and those under Independent Agreements are possible, and thus the consideration of Classes II and III in California would not pose the same risk of inefficiency and inconsistency.

In this case, the convenience of the parties and convenience of the witnesses are relatively less significant factors.  It is true that the individual Plaintiffs who are members of Class II live in California, and it would be more convenient to them to litigate in California.  Otherwise, the convenience of the parties will not be affected by transfer:  Rexam, an international company with U.S. headquarters in North Carolina, will have to travel regardless of where Plaintiffs' claims are heard, and most of the individual Plaintiffs representing proposed Classes I and III would also have to travel.  In terms of witnesses, Class II claims could be more conveniently tried in northern California because at least one witness and some documents are located here.  On the other hand, any witnesses testifying at trial in Minnesota may be twice inconvenienced by having to appear in California.  Overall,

convenience weighs in favor of keeping Class II's claim here, and may weigh in favor of transfer for Classes I and III.

The final factor to be considered is Plaintiffs' choice of forum. Because this is a proposed class action, the Court looks at extent of the parties' contacts with the forum. Here, the members of Class II, who all retired from the San Leandro and Modesto plants, have significant contacts with California: this is the jurisdiction where the independent agreements now in dispute were negotiated. In contrast, the claims of members of Classes I and III have no particular connection to the Northern District of California, and those Plaintiffs' choice of forum is accorded minimal consideration. Therefore, this factor weighs strongly against transfer of Class II's claims but only weakly against transfer of the remaining claims.

In sum, Rexam has met its burden to show that transfer of Class I's claims is required to serve the judicial goals of efficiency and consistency, overcoming the weak factor of Plaintiffs' choice of forum. With respect to Class II, however, Rexam has not met its burden to show that the interests of justice favor transfer, and the choice of those predominantly-Californian Plaintiffs to file suit here favors denial of Rexam's motion. The claims of Class III are not presently at issue in Minnesota. Without the countervailing weight of the avoidance of inconsistent rulings on the same agreement, the balance of factors with respect to Class III also tips in favor of Plaintiffs' preferred forum. Rexam's motion to stay the proceedings in this case is denied.

11

II. Transfer to Missouri Court

In the alternative, Rexam moves to transfer this case to Missouri under the "first filed" rule.

"There is a generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." Pacesetter Systems, Inc. v. Medtronic, Inc., 678 F.2d 93, 94-95 (9th Cir. 1982). This doctrine, known as the first-to-file rule, "gives priority, for purposes of choosing among possible venues when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction." Northwest Airlines, Inc. v. American Airlines, Inc., 989 F. 2d 1002, 1006 (8th Cir. 1993). A court in which the second suit was filed may transfer, stay or dismiss that proceeding in order to allow the court in which the first action was filed to decide whether to try the case. Alltrade Inc. v. Uniweld Products, Inc., 946 F.2d 622, 625 (9th Cir. 1991). However, circumstances in which an exception to the first-to-file rule will "typically" be made include bad faith, anticipatory suit and forum shopping. Id. at 628 (citations omitted).

Here, the Missouri court has already found that Rexam was engaged in a "race to the courthouse." Therefore, deference to the opinion of the court in which an earlier case was filed suggests that the Court should deny Rexam's motion to transfer. Nor do the interests of justice compel transfer to Missouri, where the court is not significantly more familiar with the factual issues than this Court is. Therefore, Rexam's motion in the alternative to

12

transfer the case to Missouri is denied.

## CONCLUSION

For the reasons described above, the Court hereby severs the claims of Mr. Cowley, Mr. Mueller and Mr. Valli, who are members of proposed Class I, from those of Ms. Angotti, Mr. Borrero, Mr. Griffith, Mr. Russell and Mr. Schreiner, who are members of proposed Classes II and III.  The Court GRANTS Rexam's motion to transfer with respect to the former Plaintiffs' claims, and hereby transfers their claims to the District of Minnesota, but DENIES the motion to transfer with respect to the latter groups (Docket No. 54).  The clerk shall send a copy of the case file to the District of Minnesota.

The remaining Plaintiffs shall file a renewed memorandum, addressing the claims of Classes II and III, in support of their motion for a preliminary injunction, and shall notice the motion for hearing at least five weeks thereafter.  Rexam may file an additional memorandum in opposition and Plaintiffs may file an additional reply, as provided by the Local Rules.

IT IS SO ORDERED.

Dated:    2/14/06

CLAUDIA WILKEN
United States District Judge

13